COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-352-CR

                                                 NO.
2-09-185-CR

 

 

JUAN ESCOBAR, JR.                                                                        APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

               FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I.  INTRODUCTION

In
one point, Appellant Juan Escobar, Jr. challenges the legal sufficiency of the
evidence to support his conviction for aggravated robbery.  We will affirm.








II.  BACKGROUND

Escobar
entered a Waffle House restaurant in Lewisville, Texas, on December 9, 2007,
sat down, and ordered lunch.  Catherine
McNeace and her six-year-old daughter were sitting nearby eating lunch as well.  As Escobar was leaving, he walked behind
McNeace, grabbed her purse, and ran out the door.  McNeace pursued Escobar, grabbed at his
jacket, and yelled, ADon=t
take my purse.@  Escobar pushed McNeace to the ground and ran
away from the Waffle House.  The
restaurant=s
cook and another customer pursued Escobar as one of the waitresses called
9-1-1.

At
this time, Juan Brown was approaching the Waffle House in his truck and saw
Escobar running with a purse as the two men chased him.  Believing that a crime was being committed,
Brown pulled his truck into a nearby parking lot and intercepted Escobar.  According to Brown, when he jumped out of his
truck, Escobar Abrandished@ a Aknife.@  Brown testified that Escobar Amoved@ the
knife threateningly:  AHe
let me know he had the knife.@  Brown also said that he Ahad
no doubt@
Escobar was intending to use the knife. 
Brown further said that he thought Escobar Awas
going to attack me, because . . . I was there to stop him.@  Brown said he believed Escobar was going to
cut him and that he Afelt [his] life was
threatened.@  In response, Brown reached into his truck,
grabbed a large metal pipe, and told Escobar, AIt=s a
fair fight now.@  Escobar allegedly declared A[D]amn,@
threw the purse, and ran away.








Although
the record does not state the physical proximity between Brown and Escobar in
terms of feet or inches, on three separate occasions during trial Brown
demonstrated before the trial judge and the jury where he stood in relation to
Escobar when Escobar exhibited the knife. 
Using an ink pen, Brown also demonstrated how Escobar motioned the knife
at Brown.

Daniel
Martinez testified that he was on his way to get a haircut when Escobar asked
for a ride.  Although Martinez said no,
Escobar got into the backseat.  Escobar
eventually got out and surrendered to police. 
Officer Duk Lee arrested Escobar and took him to the Waffle House, where
McNeace identified him as the assailant.

At
trial, officer Stephen Shaffer testified that he recovered a Ablue-handled
box-cutter style knife@ from the backseat of
Martinez=s
truck.  Shaffer said that the knife was Acertainly@
capable of causing death or serious bodily injury.  According to Shaffer, the box cutter
qualified as a deadly weapon and a person would feel threatened if someone pointed
the box cutter at him.  A second officer,
Michael Larkin, also testified that based on his experience, the box cutter
could Amost
definitely@ be
used as a deadly weapon and was capable of causing serious bodily injury or
death.








The
State charged Escobar with one count of robbery with McNeace as the alleged
victim and two counts of aggravated robberyCone
count with Bobby Watkins as the alleged victim and the other with Brown as the
alleged victim.  The count with Watkins
as the victim was dismissed prior to trial. 
A jury found Escobar guilty of robbery as to McNeace and aggravated
robbery as to Brown.  The jury assessed
punishment at fifty years= incarceration for the
robbery and seventy years= incarceration for the
aggravated robbery.  The sentences are
set to run concurrently.  This appeal
followed.

III.  LEGAL SUFFICIENCY
OF ESCOBAR=S AGGRAVATED ROBBERY CONVICTION








In
his sole point, Escobar argues that the evidence is Ainsufficient@ to
support his conviction for aggravated robbery. 
Specifically, Escobar argues that the evidence is insufficient to
establish that Brown was in fear of imminent bodily injury or death or that the
box cutter was a deadly weapon.  Escobar
does not discuss in his brief a separate issue pertaining to factual
sufficiency of the evidence, nor does he discuss the applicable standard,
analyze any disputed material facts, or attempt to explain why the evidence
supporting his conviction is factually insufficient.  And Escobar asked only that this court render
Aan
acquittal.@  Thus, Escobar has not properly raised a
factual sufficiency point, and we will conduct only a legal sufficiency
review.  See Cardenas v. State, 30
S.W.3d 384, 386 n.2 (Tex. Crim. App. 2000) (conducting only a legal sufficiency
review when appellant made no reference to the factual sufficiency of the
evidence nor the applicable standard); Chavero v. State, 36 S.W.3d 688,
693 (Tex. App.CCorpus
Christi 2001, no pet.) (en banc) (conducting only a legal sufficiency
review when defendant argued only that his Aconviction
should be vacated and a judgment of acquittal entered because there was
insufficient evidence to establish all of the necessary elements@ of
the offense but failed to reference factual sufficiency or the applicable
standard of review).

A.      Legal Sufficiency Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

B.      Applicable Law

The
State is required to prove every element of an offense beyond a reasonable
doubt.  See Tex. Penal Code Ann. ' 2.01
(Vernon 2003).  The penal code describes
robbery under section 29.02 as follows:

(a) A person commits
an offense if, in the course of committing theft as defined in Chapter 31[2]
and with intent to obtain or maintain control of the property, he:

 

(1)  intentionally, knowingly, or recklessly causes
bodily injury to another; or

 

(2)  intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death.

 

Id. ' 29.02(a)
(Vernon 2003).








Penal
code section 29.01 defines the phrase A[i]n
the course of committing theft@ as Aconduct
that occurs in an attempt to commit, during the commission, or in immediate
flight after the attempt or commission of theft.@  See id. ' 29.01
(Vernon 2003).  Thus, proof of a
completed theft is not required to establish robbery.  Wolfe v. State, 917 S.W.2d 270, 275
(Tex. Crim. App. 1996), cert. denied, 544 U.S. 1037; see also Purser
v. State, 902 S.W.2d 641, 647 (Tex. App.CEl
Paso 1995, pet. ref=d), cert. denied, 525
U.S. 838 (1998) (stating that the actual commission of theft Ais
not a prerequisite@ for robbery, as the Agravamen
of robbery is the assaultive conduct and not the theft@).

Because
robbery is a form of assault, the allowable unit of prosecution for robbery
(for double jeopardy purposes) is the same as that for an assault, and in Texas
the allowable unit of prosecution for an assaultive offense is each
victim.  Ex parte Hawkins, 6
S.W.3d 554, 560 (Tex. Crim. App. 1999). 
Thus, even though only one attempted theft might occur, the State can
prosecute a defendant for multiple robberies that stem from that single
attempted theft when there are multiple assault victims.  Ex parte Padron, 16 S.W.3d 31, 34
(Tex. App.CHouston
[1st Dist.] 2000, pet. ref=d).

Under
section 29.03, aggravated robbery occurs when a person commits robbery as
defined in section 29.02 and (1) causes serious bodily injury to another
or (2) uses or exhibits a deadly weapon. 
See Tex. Penal Code Ann. ' 29.03
(Vernon 2003).








The penal code
defines A[d]eadly weapon@ as

 

(A)   a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury;
or

 

(B)   anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.

 

Id. ' 1.07(a)(17)
(Vernon Supp. 2009).  Factors that a jury
may consider in determining whether an object used in the commission of a theft
is a deadly weapon include (1) words of the accused, (2) the intended
use of the weapon, (3) the size and shape of the weapon,
(4) testimony by the victim that he feared death or serious bodily injury,
(5) the severity of woundsCif
inflicted, (6) the manner in which the assailant allegedly used the
object, (7) physical proximity of the parties, and (8) testimony as
to the weapon=s
potential for causing death or serious bodily injury.  See Brown v. State, 716 S.W.2d 939,
946B47
(Tex. Crim. App. 1986) (discussing factors used to determine whether an object
qualifies as a deadly weapon); see also Bui v. State, 964 S.W.2d 335,
341B42
(Tex. App.CTexarkana
1998, pet. ref=d.)
(same).

C.      Legal Sufficiency Analysis








In
this case, the State provided evidence of Escobar=s
acts toward Brown during Escobar=s
immediate flight from the Waffle House after he had absconded with McNeace=s
purse and pushed her to the ground.  The
State offered testimony by Brown that Escobar had Abrandished@ the
box cutter and that Escobar Alet
[Brown] know he had the knife.@  Brown also testified that Escobar made it
clear that he intended to use the box cutter on Brown because Brown attempted
to stop Escobar.  Brown said that he
feared Escobar Awas going to attack@
him, that he believed that Escobar was going to cut him, and that he feared for
his life.  Ultimately, Brown demonstrated
his encounter with Escobar before both the trial judge and the jury, allowing
both the judge and the jury to thoroughly familiarize themselves with the
distance between Brown and Escobar and to also grasp the manner in which
Escobar exhibited the weapon toward Brown.

Additionally,
the State introduced multiple pictures of the box cutter and displayed them to
the jury.  Furthermore, two police
officers testified that the box cutter was capable of causing death or serious
bodily harm.  See Bui, 964 S.W.2d
at 341B42.

Viewing
the evidence in a light most favorable to the prosecution, the jury could have
found beyond a reasonable doubt that, Ain
immediate flight after the attempt or commission of theft,@
Escobar intentionally or knowingly placed Brown in fear of imminent bodily
injury or death when he displayed the box cutter toward Brown.  See Tex. Penal Code Ann. '' 29.01(1),
29.02(a)(2), 29.03(2).  We hold that the
evidence is legally sufficient to support Escobar=s
conviction for aggravated robbery.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at
778.  Thus, we overrule Escobar=s
sole point.

IV.  CONCLUSION








Having
overruled Escobar=s sole point, we affirm the
trial court=s
judgment pertaining to Escobar=s
aggravated robbery conviction in cause no. 02-08-00352-CR.  Because Escobar does not challenge his
robbery conviction, we also affirm the trial court=s
judgment pertaining to Escobar=s
robbery conviction in cause no. 02-09-00185-CR.

 

BILL MEIER

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P.
47.2(b)

 

DELIVERED:  April 15, 2010











[1]See Tex. R. App. P. 47.4.





[2]Under section 31.03,
theft is defined as Aunlawfully
appropriat[ing] property with intent to deprive the owner of property.@  Tex. Penal Code Ann. ' 31.03 (Vernon
Supp. 2009).